1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

ANDREW LAWRENCE, a single man,

      Plaintiff,

  v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

      Defendant.

Case No. C4-5791FDB

ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
ON AFFIRMATIVE DEFENSE NO. 4

15

16

17

18

19

20

      Plaintiff Andrew Lawrence has filed suit against Defendant The Prudential Insurance

Company of America ("Prudential"), claiming that Prudential wrongfully denied him long-term

disability benefits under an ERISA governed policy ("the Plan").   Prudential has answered and

alleged, among other things, that even if Mr. Lawrence were entitled to benefits under the Plan, any

such benefits should be reduced by the amount of workers compensation payments received by Mr.

Lawrence.[1]

21

22

      Before the court is Mr. Lawrence's motion for partial summary judgment, seeking to strike

Prudential's affirmative defense of offset, along with Prudential's opposition and cross-motion for

23

24

25

_____

[1]The motions before the court address only whether the offset provision applies to Mr.
Lawrence's workers' compensation benefits.  The outright denial of Mr. Lawrence's disability claim
remains in dispute and is not part of this Order.

26

ORDER - 1

1  partial summary judgment, seeking an order establishing that any benefits to which Mr. Lawrence

2  may show himself entitled are subject to the offset of workers compensation payments.  Prudential

3  also claims that the appropriate standard of review is one of deference, rather than *de novo*, because

4  the Plan vests the plan administrator with discretionary authority to determine benefits eligibility.

5      Thus, the central issues for the court to decide are (1) whether the Plan properly vests the

6  plan administrator with discretionary authority establishing an abuse-of-discretion standard; and (2)

7  whether payments received by Mr. Lawrence from the Washington Department of Labor and

8  Industries should be offset as "deductible sources of income" as defined in the Plan.

9      To aid the court in resolution of these issues, it heard oral argument on October 14, 2005.

10  The court has also considered the parties' motions, responses, affidavits in support, and the balance

11  of the record.  For the reasons articulated herein, Plaintiff's motion for partial summary judgment is

12  GRANTED as to the standard of review and DENIED as to the affirmative defense.  Conversely,

13  Defendant's cross-motion for partial summary judgment is DENIED as to the standard of review and

14  GRANTED as to its affirmative defense of offset.

15                                          I.

16                                 *Factual Background*

17      The facts relevant to the issues presently before the court are undisputed.  Prudential funded

18  a long-term disability Plan that was provided to employees of Aero Controls, Inc.  The Plan provides

19  disability benefits to employees who are "disabled" as defined by the Plan.  Initially, the Plan requires

20  an employee to be unable to perform the substantial and material duties of the employee's regular

21  occupation and to have at least a 20% loss of indexed monthly earnings.  After 24 months of

22  payment, the definition of "disabled" changes under the Plan.  At that time, "disability" is defined as

23  the "inability to perform the duties of any gainful employment."

24      A participant's benefits are calculated as a certain percentage of their recent average wage.

25  And, as the benefits are intended to replace an employee's income, the amount of the benefit is

26  ORDER - 2

1  reduced by certain "deductible sources of income."  The applicable provision of the Plan provides for

2  the following sources of income:

3           The amount that you receive or are entitled to receive as loss of time benefits
            under:
4
            (a)      a worker's compensation law;
5
            (b)      an occupational disease law; or
6
            ( c)     any other act or law with similar intent
7
            * * *
8
            3.       The amount that you, your spouse and children receive or are entitled
9                    to receive as loss of time disability payment because of your disability
                     under:
10
            (a)      The United States Social Security Act;
11
            . . . or
12
            (e)      any similar Plan or act.
13

14         While working for Aero Controls, Mr. Lawrence injured his back on July 9, 1999.  Plaintiff

15  applied for and was granted workers' compensation benefits from Washington's Department of

16  Labor and Industries ("L&I"), in the amount of $1,666.00 per month.  Mr. Lawrence also applied for

17  disability benefits from the Social Security Administration ("SSA") and in June 2001, the SSA

18  awarded him disability benefits at the rate of $799.00 per month, retroactive to February 2001.

19         Mr. Lawrence then applied for long-term disability benefits under the Plan.  Those benefits

20  were approved effective November 21, 2000 on the basis that Mr. Lawrence was unable to perform

21  the duties of his regular occupation.  Under the Plan, Mr. Lawrence's benefits from L&I and Social

22  Security reduced or offset the amount of benefits he was eligible to receive.

23         L&I subsequently found Mr. Lawrence totally and permanently disabled effective May 16,

24  2003.  At that time, L&I terminated Mr. Lawrence's "time loss compensation benefits" and placed

25  him "on pension" effective May 16, 2003.   This "pension" allows Mr. Lawrence to continue to

26  ORDER - 3

1  receive from L&I a monthly payment of a percentage of his last wages, to be paid for the rest of his

2  life.

3        Under Washington law, injured workers who receive L&I pensions for permanent disability

4  are given three choices: (1) continue to receive monthly payments at a certain percentage of their last

5  wages (60-75 percent of their last wages earned, depending on the number of dependents), but with

6  payments ending when the worker dies; (2) receive a lower monthly amount, but if the worker dies,

7  his or her surviving spouse or other dependent would continue to receive the same amount for a

8  period of time; and (3) receive a lower monthly amount, but if the worker dies, his or her surviving

9  spouse or other dependent would receive half of the monthly benefit for a period of time.  RCW

10 51.32.067.  Plaintiff chose the second option.  Prior to the change in Mr. Lawrence's L&I benefits,

11 he had been entitled to receive monthly payments of at least 64% of his last earned wages.  RCW

12 51.32.060, RCW 51.32.067(a).

13       After paying benefits under the Plan to Mr. Lawrence for 24 months, Prudential denied Mr.

14 Lawrence's long-term disability claim outright because it determined that he was no longer

15 "disabled" as that term is used in the Plan.

16                                         II.

17                              *Summary Judgment Standard*

18       Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

19 and admissions on file show that there is no genuine issue as to any material fact and that the moving

20 party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56( c).  Summary judgment is not

21 proper if material factual issues exist for trial.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.

22 1995), *cert. denied*, 516 U.S. 1171 (1996).

23       If the moving party shows that there are no genuine issues of material fact, the non-moving

24 party must go beyond the pleadings and designate facts which show a triable issue.  Celotex Corp. v.

25 Catrett, 477 U.S. 317, 322-323 (1986).  Summary judgment is proper if the moving party shows that

26 ORDER - 4

1  there is no evidence which supports an essential element to the non-moving party's claim.  Celotex,

2  477 U.S. 317 (1986).  The substantive law governs whether a fact is material.  Anderson v. Liberty

3  Lobby, Inc., 477 U.S. 242, 248 (1986).

4                                                    III.

5                                          *Standard of Review*

6          The Supreme Court has held that if an ERISA plan vests in the plan administrator the

7  discretionary authority to determine a beneficiary's eligibility for benefits, reviewing courts should

8  afford deference to the administrator's decision.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S.

9  101, 115 (1989).  Reviewing courts uphold these decisions unless the plan administrator has abused

10 the discretion granted to it.  *See, Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

11 Without such discretionary authority, courts shall assign meaning to the terms of a plan "in an

12 ordinary and popular sense as would a [person] of average intelligence and experience.  *Kearney v.*

13 *Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999).   Any ambiguities in the terms of the Plan

14 must be construed against the insurer.  *Pension Trust Fund for Operating Engineers v. Federal Ins.*

15 *Co.*, 307 F.3d 944 (9th Cir. 2002).

16         Prudential claims that the Plan in effect when it terminated Mr. Lawrence's benefits granted

17 it, as the plan administrator, discretionary authority.  Prudential relies on the following provision of

18 the Plan:

19                 This Group Contract underwritten by The Prudential Insurance Company of
                America provides insured benefits under the Employer's ERISA plan(s).  The
20              Prudential Insurance Company of America as Claims Administrator has the
                sole discretion to interpret the terms of the Group Contract, to make factual
                findings, and to determine eligibility for benefits.  The decision of the Claims
21              Administrator shall not be overturned unless arbitrary and capricious.

22

23         The language cited by Prudential is contained in the "Summary Plan Description," provided

24 by Aero Controls, Inc., which purports to describe the plan and inform its employees of their rights

25 under the Plan.  On the page immediately preceding that containing the above-cited language, the

26 ORDER - 5

following language appears:

> The Summary Plan Description is not part of the Group Insurance Certificate.
> It has been provided by Your Employer and included in your Booklet-
> Certificate upon the Employer's request.

The language upon which Prudential relies does not appear in any part of the Plan other than the Summary Plan Description.   Prudential refers the court, however, to the Plan's integration clause, which states that "the forms shown in the Table of Contents as of the Contract Date," are part of the Group Contract.  The Table of Contents does include the Summary Plan.  However, when one references the Summary Plan, included is the language specifically excluding it from the Group Insurance Certificate.  Prudential argues that the Group Contract and the Group Certificate are not one and the same.  While this may be technically correct, the court finds the route Prudential proposes is far too circuitous and confusing.  Assuming the average purchase of insurance were able to follow the trail proposed by Prudential, it is unclear how that purchaser could be expected to distinguish between the Certificate and Contract; particularly with the inclusion of a page devoted entirely to excluding the Summary Plan.   Therefore, the court finds the Plans's reservation of discretion to be too ambiguous to overcome the presumption of *de novo* review.

IV.

*Offset Benefits*

Mr. Lawrence claims that as a permanently and totally disabled individual according to L&I, he can no longer receive "time loss benefits," which are admittedly subject to offset by other sources of income under the Plan.  He argues that as a claimant classified as permanently disabled, he receives a monthly "pension."  RCW 51.32.060.  He argues further that, because time loss compensation is separate from pension payments under the worker's compensation statutes, it stands to reason that the average and ordinary person would not construe the pension payments as constituting time loss payments.  Mr. Lawrence also claims that, at best, the Plan language is

ORDER - 6

1   ambiguous and thus, the court must resolve any ambiguity regarding the terms "time loss benefits" or

2   "time loss compensation" in his favor.[2]

3          The court does not agree that the terms "time loss benefits" or "time loss compensation" are

4   ambiguous.  Neither does the court agree that the "pension" payments awarded by L&I are the type

5   of already earned deferred compensation typically suggested by traditional retirement benefits or as

6   ordinarily understood by the average person.  Rather, the finding of a "permanent and total

7   disability" by L&I means that the worker has suffered a complete loss of earning power, such as an

8   inability to perform reasonably obtainable work suitable to his existing qualifications and training.

9   *See, Shea v. Dep't of Labor & Indus.*, 12 Wn.App. 410, 529 P.2d 1131 (1974).

10         The court's interpretation of the "pension" payments at issue is also consistent with

11  Washington law.  The only difference between temporary total disability and permanent total

12  disability is the duration of the disability; in all other respects they are the same.  *Kaiser Aluminum &*

13  *Chemical Corp. v. Overdorf*, 57 Wash. App. 291, 296 n. 6, 788 Pl.2d 8 (1990) (*quoting Bonko v.*

14  *Department of Labor & Indus.*, 2 Wash.App. 22, 466 P.2d 526 (1970).  Once a claimant's disabling

15  condition becomes fixed and static, the time loss payments cease and he is awarded a permanent

16  disability award based on his inability to work "during the period of such disability."   L&I refers to

17  the benefit as a "non-statutory pension, " stating that it may not be payable if the claimant is able to

18  return to work.  *Workers' Guide to Industrial Insurance Benefits*, at 15.   L&I further describes the

19  "pension" benefits as benefits that are paid monthly and are "based on the amount of time-loss

20  compensation to which you are entitled."  *Id.* at 15.

21         The purpose of the "pension" is the same as the time loss payments – that is, to compensate

22  for loss of earning power, but simply for a longer duration (the worker's expected working life), *See,*

23  _____

24         [2]The language of the Plan clearly allows offset of "disability payments because of your
    disability under The United States Social Security Act."  Mr. Lawrence does not argue that the
25  Social Security disability benefits he receives are excluded from offset.

26  ORDER - 7

1   *Harrington v. Department of Labor & Indus.*, 9 Wn.2d 1, 7, 113 P.2d 518 (1941).  The "pension" is

2   calculated on the same basis as the "time loss" temporary benefits as a certain percentage of the

3   worker's monthly wage paid on a monthly basis.  RCW 51.32.060.  And, the payments may be

4   terminated if the worker is able to return to work.  The court concludes that the "pension" represents

5   permanent total disability benefits paid to compensate Mr. Lawrence for work time lost due to a

6   disabling condition and, therefore, it is an amount received as loss of time benefits under a worker's

7   compensation law.[3]  Thus, any payment of benefits to Mr. Lawrence should be offset by the

8   permanent total disability benefits from L&I that he receives or is entitled to receive.

9          ACCORDINGLY,

10         IT IS ORDERED:

11         (1)     Plaintiff's motion for partial summary judgment (Dkt.#19) is **GRANTED** as to the

12                 standard of review and **DENIED** as to Defendant's affirmative defense No. 4;

13                 Defendant's cross-motion for partial summary judgment (Dkt.#23) is **DENIED** as to

14                 the standard of review and **GRANTED** as to Defendant's affirmative defense No. 4.

15

16         DATED this 18th day of October, 2005.

17

18                                                  _____

19                                                  FRANKLIN D. BURGESS
                                                    UNITED STATES DISTRICT JUDGE

20

21         _____

22         [3]Prudential also contends and the court agrees, that adoption of Mr. Lawrence's definition
       would lead to the unacceptable result of two identically situated participants under the Plan, both
23     with the same disability, being treated differently because one person's condition has been
       determined to be "fixed" while the other's has not.  Thus, when the disability has not been "fixed,"
24     L&I payments are subject to the offset provision (a result with which Mr. Lawrence concurs), but
       once the disability is "fixed," they would no longer be subject to the offset provision.  This same
       anomaly would occur in states other than Washington that do not refer to its benefits for a fixed
25     disability as a "pension."

26     ORDER - 8