UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANDREW LAWRENCE, a single man,

Plaintiff,

v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,

Defendant.

Case No. CV 4-5791 FDB

FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on regularly for non-jury trial on the Administrative Record on October 31, 2005. Plaintiff Andrew Lawrence ("Lawrence") was represented by counsel, Brad J. Moore of Stritmatter Kessler Whelan Whitney Coluccio. Defendant The Prudential Insurance Company of America ("Prudential") was represented by Brian K. Keeley of Bullivant Houser Bailey PC. The Court, having considered the Administrative Record and having heard argument and considered the briefs and memoranda of counsel, and having further considered its prior orders herein, makes the following:

### I. FINDINGS OF FACT

1. Mr. Lawrence worked for Aero Controls as a brush plater, a job involving setting up and controlling plating equipment to electrolytically coat metal objects. Mr. Lawrence's job required

ORDER - 1

him to stand frequently, and to sit, walk, drive, bend, and stoop occasionally.

2. In July of 1999, Mr. Lawrence was injured in a workplace fall. Lumbar MRI's dated October 28, 1999 and September 19, 2000 document a large disc protrusion and tear at LF-S1. Laminectomy and discectomy L4-S1 surgery was performed on Mr. Lawrence on October 9, 2000.

3. Mr. Lawrence's employer, Aero Controls, Inc., provides its employees with long-term disability insurance (the "Plan").

4. The Plan defines "disabled" as follows:

> You are disabled when Prudential determines that:
>
> - You are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and
>
> - You have a 20% or more loss in your *indexed monthly earnings* due to that *sickness* or *injury*.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience.
>
> …
>
> *Gainful occupation* means an occupation, including self-employment, that is or can be expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work. (emphasis in original)

5. On March 7, 2001, Mr. Lawrence applied for long-term disability benefits under the Plan.

6. In early 2001, Mr. Lawrence also applied for worker's compensation benefits from Washington's Department of Labor and Industries (L&I). As part of L&I's review of his application, Mr. Lawrence participated in a Performance-Based Physical Capacity Evaluation ("PCE") on March 9, 2001. The evaluator concluded that, as of March 9, 2001, Mr. Lawrence was capable of performing light work, with limitations including, standing 10 to 15 minutes at a time and

ORDER - 2

sitting 20 to 30 minutes at a time.

    7.   Dr. Guy Earle, Plaintiff's attending physician since at least December 2000, prepared a rating evaluation report on April 26, 2001, placing Mr. Lawrence's permanent partial disability level at a Category 6 out of a potential 8.

    8.   At this time, L&I concluded that Mr. Lawrence was partially disabled and awarded him workers' compensation benefits, retroactive to April 27, 2000.

    9.   Based on medical evidence indicating that Mr. Lawrence could not perform the duties of his own job, Prudential approved Mr. Lawrence's claim for long-term benefits and paid those benefits for the 24-month period of November 21, 2000 to November 22, 2002.

    10.   In April 2002, in anticipation of the expiration of the 24-month benefit period, Prudential sent a follow-up evaluation request for Dr. Earle to complete. At that time, Dr. Earle indicated that Mr. Lawrence was unable to return to the job of his injury, but that he was capable of light duty work with the permanent restrictions, including "no lifting, etc."

    11.   In July 2002, an employee of Prudential's vocation rehabilitation unit ran a Transferable Skills Analysis ("TSA") to determine if there were jobs that Mr. Lawrence could perform, meeting the conditions of the PCE, and which would provide him with at least 60% of his previous income. Prudential advised Mr. Lawrence that there were at least three light-duty occupations it felt met the conditions of the PCE and would provide him with such income. Prudential listed the occupations of Electronics Assembler, Bench Assembler and Electric Tool Repairer. To obtain the average earnings for these occupational classifications for the Seattle, Washington labor market, Prudential looked them up in the indexes of the Economic Research Institute.

ORDER - 3

12. No physician or otherwise qualified medical provider reviewed Prudential's conclusion that Mr. Lawrence was capable of performing a job within these occupations given the PCE limitations.

13. No one from Prudential or on its behalf, met, interviewed or examined Mr. Lawrence.

14. There is no evidence in the Administrative Record that Mr. Lawrence has the required education, training, and/or experience to qualify for a job within the identified occupational classifications or that jobs within these occupations actually exist in the marketplace.

15. Prudential's identification of the three occupational classifications was not accompanied by any description of the physical requirements related to each occupation. In particular, there was no description of the critical job functions applicable to Mr. Lawrence's condition and restrictions, i.e., sitting, standing and walking.

16. L&I declared that Mr. Lawrence was totally and permanently disabled as of June 25, 2002. L&I also found that further vocational services would not likely help Mr. Lawrence return to any type of work and that his limitations removed him from any type of gainful employment. In its Vocational Rehabilitation Closing Report dated May 9, 2002, Concentra Managed Care, Inc. ("Concentra"), concluded that Mr. Lawrence was "not able to work or participate in vocational services due to [his] industrial injury." The vocational rehabilitation counselor further concluded that Mr. Lawrence "is not employable within his labor market area due to the physical limitations related to [his] industrial injury." The Closing Report also stated:

> [Mr. Lawrence's] physical limitations are the primary barrier to employability. The worker is unable to stand greater than 10 minutes at a time or sit greater than 30 minutes at a time. The sitting prevents him from commuting to Tacoma for any type of training or employment. [Mr. Lawrence] has also been rated as a Category VI which supports his limited physical abilities. Other barriers to vocational services are the limited labor market within Kitsap County, and the lack of any transferable skills from [Mr. Lawrence's] work

ORDER - 4

history . . . . [T]here are no vocational options for this worker given his physical limitations and the barriers associated with his labor market area."

17. During Concentra's evaluation of Mr. Lawrence, it was noted that Mr. Lawrence was actively involved in the evaluation and plan process and was also involved in attempting to locate employment within Kitsap County and other areas where he might be qualified.

18. The Social Security Administration also found Mr. Lawrence permanently and totally disabled. Mr. Lawrence has received payments from the SSA since at least February 2001.

19. Based on its evaluation, Prudential terminated long-term disability benefits to Mr. Lawrence as of November 22, 2002. Mr. Lawrence appealed Prudential's decision.

20. Mr. Lawrence's counsel sent job descriptions for all jobs identified by Prudential to Dr. Earle. On January 10, 2003, Dr. Earle disapproved Mr. Lawrence's ability to perform the positions on a permanent basis, stating that he could not compare the job descriptions with the PCE because the descriptions did not include specific expectations of the amount of sitting, standing, or walking required by the positions.

21. On March 13, 2003, Dr. Earle's rating evaluation report placed Mr. Lawrence's permanent partial disability level at a Category 7 out of a potential 8, indicating that Mr. Lawrence's condition was worsening.

22. Based on its review of the information provided by Dr. Earle, Prudential concluded that Mr. Lawrence was capable of performing a sedentary occupation, provided he was given the opportunity to change positions periodically. Prudential performed another TSA and identified three such sedentary occupations: Semiconductor Bonder, Surveillance Systems Monitor, and Microfilming Document Preparer.

23. Although Dr. Earle had not approved of positions between the sedentary and light work

ORDER - 5

capacity because they did not fit within the parameters of the PCE, Prudential concluded that the medical evidence did not support that Mr. Lawrence was unable to perform sedentary duties with the ability to change position as needed for comfort and that the PCE supported that Mr. Lawrence is capable of working.

24.  Prudential concluded that the three sedentary occupations identified above were within Mr. Lawrence's education, training, and experience, were entry level requiring minimal training on the job after hire, and would provide Mr. Lawrence with at least 60% of his previous income.  Based on these conclusions, Prudential denied Mr. Lawrence's appeal on June 2, 2003.

25.  No physician or otherwise qualified medical provider reviewed Prudential's conclusion that Mr. Lawrence was capable of performing the sedentary occupations within the PCE limitations.

26.  No one from Prudential or anyone on its behalf, met, interviewed or examined Mr. Lawrence.

27.  There is no evidence in the Administrative Record that Mr. Lawrence has the required education, training and/or experience to qualify for these occupations or that jobs within these occupations exist in the marketplace.

## II. CONCLUSIONS OF LAW

1.  The Plan is an employee welfare benefit plan governed by ERISA.

2.  The evidence is limited to the Plan documents and the Administrative Record.

3.  The court conducts a *de novo* review of Prudential's decision to terminate the Mr. Lawrence's long-term disability benefits because the Plan does not properly vest discretion for determining eligibility for benefits in Prudential as the Plan Administrator.  (*See* Court's Order at Dkt. No. 35).

ORDER - 6

4. Applying the Plan's standard for determining a beneficiary's eligibility for long-term disability benefits, Mr. Lawrence was disabled after November 21, 2002 and continues to be disabled to the present, because he was and is not capable of performing the duties of any gainful employment, as that term is defined in the Plan.

5. The Plan does not require that employment must be found within Mr. Lawrence's present job market.  However, Mr. Lawrence's ability to obtain "gainful employment" as that term is defined in the Plan is restricted to those jobs he can perform within the PCE limitations.   There is no evidence in the Administrative Record that the occupational classifications identified by Prudential are within Mr. Lawrence's capabilities.  There is no evidence in the Administrative Record that jobs within the occupational classifications exist in the job market, much less in the job market within Mr. Lawrence's physical and vocational capabilities.

6. Prudential's conclusions are in sharp contrast with those of L&I and the Social Security Administration, who found Mr. Lawrence permanently and totally disabled.  Prudential's conclusion of Mr. Lawrence's employability also stands in sharp contrast to the vocational rehabilitation review performed by L&I.  L&I's review involved more extensive testing and Mr. Lawrence's participation before reaching the conclusion that there were no vocational options for Mr. Lawrence given his physical limitations and the barriers associated with his labor market area.

7. Additionally, the three sedentary occupations identified by Prudential lacked job descriptions sufficient to allow a medical evaluation to determine whether Mr. Lawrence could indeed perform these jobs within the PCE limitation parameters.  Prudential appears to have merely provided "occupational classifications" with no indication that jobs within these classifications actually existed in any job market.

ORDER - 7

8.  Prudential's decision to terminate Mr. Lawrence's long-term disability benefits after November 21, 2002, is reversed.[1]

9.  Pursuant to the terms of the Plan, Prudential owes Mr. Lawrence past due long-term disability benefits in the amount of $100 per month from November of 2002 to the present.

10.  Pursuant to the terms of the Plan, Prudential must reinstate Mr. Lawrence's long-term disability benefits into the future.

11.  Mr. Lawrence may file a motion for recovery of reasonable attorney fees and costs pursuant to ERISA, 29 USC 1001, *et seq.*  Mr. Lawrence shall submit his claim for attorney fees and costs to the court within thirty days (30) days from the date of this Order and shall have it properly noted on the court's motion docket to allow appropriate times for response and reply.

IT IS SO ORDERED.

DATED this  9th   day of November, 2005.

                                                                          /s/ Franklin D. Burgess
                                                                          FRANKLIN D. BURGESS
                                                                          UNITED STATES DISTRICT JUDGE

---

[1] Under an *abuse of discretion* standard, the court similarly concludes that Prudential's decision to terminate Mr. Lawrence's long-term disability benefits as of November 21, 2002 was an abuse of discretion.  The Administrative Record lacks the required evidence that Mr. Lawrence is capable of performing the duties of a "gainful occupation" as that term is defined in the Plan.

ORDER - 8